# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

M&J GENERAL CONTRACTORS, INC.,

      Plaintiff,

v.

SYMBIONT CONSTRUCTION, INC. *formerly known as* TV JOHN & SON, INC.,

      Defendant.

Case No. 20-CV-945-JPS

**ORDER**

On June 24, 2020, Plaintiff M&J General Contractors, Inc. ("M&J") filed this breach-of-contract action against Defendant Symbiont Construction, Inc. ("Symbiont"). (Docket #1). On September 8, 2020, Symbiont filed a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(1) and the *Colorado River* Abstention Doctrine. (Docket #6). This motion is now fully briefed, and, for the reasons explained below, the Court will deny it.

**1. LEGAL STANDARD**

Motions to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(1) allow a party to challenge a court's subject matter jurisdiction. Fed. R. Civ. P. 12(b)(1). When reviewing such a motion, a court must "accept[] as true all well-pleaded factual allegations and draw[] reasonable inferences in favor of the plaintiffs." *Bultasa Buddhist Temple of Chi. v. Nielsen*, 878 F.3d 570, 573 (7th Cir. 2017). Further, a court "may properly look beyond the jurisdictional allegations of the complaint and view whatever evidence has been submitted on the issue to determine whether

in fact subject matter jurisdiction exists." *Evers v. Astrue*, 536 F.3d 651, 656–57 (7th Cir. 2008) (internal quotation and citation omitted).

## 2. RELEVANT ALLEGATIONS

### 2.1 Factual Background

This action arises out of the termination of a written contract agreement between M&J and Symbiont. In April 2017, M&J and Symbiont entered into a subcontract agreement (the "Agreement"). (Docket #1 at 2, #1-1 at 1–10). The Agreement outlined various improvements to be made on a Kroger grocery store in West Lafayette, Indiana; the Agreement defined the improvements as the "Kroger J-824 Expansion (W Lafayette, IN)" (the "Project"). (Docket #1 at 2). Symbiont was the general contractor for the Project, and it hired M&J to complete the carpentry and painting work. (*Id.*) M&J and Symbiont agreed that, for $725,000.00, M&J would complete the work contained in the "Scope of Work" clause of the Agreement. (*Id.*) The total contract was broken down into two parts: (1) $575,000.00 for the carpentry work, and (2) $150,00.00 for the painting and coatings. (*Id.*) The Agreement also contained a choice-of-law provision which stated that the Agreement "shall be governed and construed in accordance with the laws of the State of Wisconsin." (Docket #1-1 at 6). It further noted that each party submitted to the "exclusive jurisdiction of the state and federal courts located in Milwaukee County, Wisconsin." (*Id.*)

The Project commenced on or about April 17, 2017, and, shortly thereafter, M&J began its work. (*Id.*) At some point, M&J entered into a subcontract agreement with Premier Commercial Cleaning, LLC ("Premier") to perform certain portions of M&J's work under the Agreement (the "Premier Subcontract"). (Docket #7 at 2). Like Symbiont, M&J required its subcontractors and materialmen to perform in a

workmanlike manner and to submit invoices prior to being paid for their work on the Project. (Docket #1 at 3).

M&J alleges that, by August 2018, the Project was over 80% complete and that M&J was current with all of its obligations to vendors and contractors. (*Id.*) M&J states that it regularly provided Symbiont with detailed financial payouts that included the amounts paid to each of its painting and carpentry suppliers and subcontractors, along with lien waivers when necessary. (*Id.*) M&J provided this information with its monthly invoicing and pay applications in a manner that conformed with the Agreement. (*Id.*)

On August 22, 2018, Max Dobson ("Dobson"), the president of M&J, received an email from Chad R. Johnson ("Johnson"), the senior project manager for Symbiont. (*Id.*, Docket #1-2). This email purported to terminate the Agreement, effective immediately. (*Id.*, Docket #1-2). Johnson stated that Symbiont was terminating the Agreement because M&J was not paying its subcontractors. (Docket #1-2). The termination email did not provide M&J any procedure by which it could contest Symbiont's allegations or review the allegedly outstanding amounts. (*Id.*)

Premier subsequently submitted an invoice (dated November 24, 2018) to Symbiont for $264,593.88, apparently seeking monies from Symbiont owed to Premier by M&J. (*Id.*, Docket #6-1 at 5). On February 20, 2019, Premier recorded a "Sworn Statement and Notice of Intention to Hold a Mechanic's Lien" in the Office of Recorder of Tippecanoe County, Indiana with regard to the Property (the "Mechanic's Lien"). (Docket #7 at 2).

M&J made multiple demands to continue work on the Project and sought to contest Johnson's allegations, but Symbiont refused to reinstate the Agreement. (Docket #1 at 4). Symbiont did not allow M&J to complete

the Project and has refused to remit the remaining payments due under the Agreement. (*Id.*)

### 2.2 Procedural Background

On April 19, 2019, M&J filed an action in the District Court for the Northern District of Illinois, and it was assigned to Judge Elaine E. Bucklo. *See M&J General Contractors, Ltd. v. Symbiont Construction, Inc.*, 19-cv-2659, Docket #1 (N.D. Ill. Apr. 19, 2019). In that action, M&J brought a single count for breach of contract, namely that "Symbiont's termination of the Subcontractor Agreement constitutes a material breach of the Subcontractor Agreement." *Id.* at 4. M&J alleged that it had been damaged in an amount not less than $499,911.55, not inclusive of attorneys' fees, and that Symbiont was required to pay to M&J pursuant to the Agreement. *Id.* Soon after, Symbiont filed a motion to dismiss pursuant to the *Colorado River* Abstention Doctrine or, alternatively, to dismiss under Rule 12(b)(3) for improper venue or, alternatively, to transfer venue pursuant to 28 U.S.C. § 1404(a).

During the pendency of the action in the Northern District of Illinois, on June 27, 2019, Symbiont filed a state action in Tippecanoe County, Indiana against M&J and Premier (the "Indiana Action"). (Docket #6-1). The Indiana Action contains nine counts: (1) action to quiet title to real estate (an *in rem* action asserting that the Mechanic's Lien is invalid); (2) action for slander of title against Premier; (3) action for declaratory judgment that the Mechanic's Lien is void as a matter of law; (4) claim for breach of contract against Premier; (5) breach of implied duties against Premier; (6) claim for express indemnity against Premier; (7) claim for breach of contract against M&J (alleging that M&J breached the Agreement by failing to pay certain

subcontractors and suppliers, including Premier); (8) breach of implied duty against M&J; and (9) claim for express indemnity against M&J. (*Id.*)

On September 30, 2019, Judge Bucklo issued an order transferring the action pending in the Northern District of Illinois to the Eastern District of Wisconsin. (Docket #6-2). In the order, Judge Bucklo relied on the parties' common agreement that venue would be more appropriate in the Eastern District of Wisconsin and, therefore, chose not to address Symbiont's arguments pursuant to the *Colorado River* Abstention Doctrine. (*Id.*) For reasons unclear, Judge Bucklo's transfer order was never effectuated by that district's clerk's office, nor does it appear that there was any independent follow-up by M&J. M&J states that it did not immediately turn its attention to the Eastern District of Wisconsin because it was attempting to settle with Symbiont. (Docket #8 at 8).

On June 24, 2020, M&J filed the action now before the Court. On the civil cover sheet, M&J selected "Original Proceeding" (as opposed to "Transferred from Another District"). (Docket #1-5). Almost identical to the complaint filed in the Northern District of Illinois, the complaint in the present case brings a single count for breach of contract. (*Id.*) M&J alleges that it has been damaged in an amount not less than $499,911.55, not inclusive of attorneys' fees, and that Symbiont is required to pay to M&J pursuant to the Agreement. (*Id.*) Symbiont now moves the Court to dismiss this case pursuant to the *Colorado River* Abstention Doctrine.

3. **ANALYSIS**

Generally, federal courts have a "virtually unflagging obligation . . . to exercise the jurisdiction given them." *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 817 (1976). Thus, "as between state and federal courts, the rule is that 'the pendency of an action in the

state court is no bar to proceedings concerning the same matter in the Federal court having jurisdiction.'" *Id.* (quoting *McClellan v. Carland*, 217 U.S. 268, 282 (1910)). In some cases, however, the *Colorado River* Abstention Doctrine allows a federal district court to "stay or dismiss a suit . . . when a concurrent state court case is underway, but only under exceptional circumstances and if it would promote 'wise judicial administration.'" *Freed v. J.P. Morgan Chase Bank, N.A.*, 756 F.3d 1013, 1018 (7th Cir. 2014) (quoting *Colorado River Water Conservation Dist.*, 424 U.S. at 817–18).

The Seventh Circuit has adopted a two-part test to assess whether the doctrine should apply. *Id.* "First, the court must determine whether the state and federal court actions are parallel." *Id.* Suits are parallel when "substantially the same parties are contemporaneously litigating substantially the same issues in another forum." *Id.* at 1019 (quoting *Interstate Material Corp. v. City of Chicago*, 847 F.2d 1285, 1288 (7th Cir. 1988)).

Second, "[i]f . . . the court determines that the proceedings are parallel, the court must decide whether abstention is proper by carefully weighing ten non-exclusive factors." *Id.* at 1018. These factors include the following:

> (1) whether the state has assumed jurisdiction over property;
>
> (2) the inconvenience of the federal forum;
>
> (3) the desirability of avoiding piecemeal litigation;
>
> (4) the order in which jurisdiction was obtained by the concurrent forums;
>
> (5) the source of governing law, state or federal;
>
> (6) the adequacy of state-court action to protect the federal plaintiff's rights;
>
> (7) the relative progress of state and federal proceedings;
>
> (8) the presence or absence of concurrent jurisdiction;

(9) the availability of removal; and

(10) the vexatious or contrived nature of the federal claim.

*Id.*

No one factor is determinative, and a court must "treat as paramount the overriding rule that abstention is the exception." *Sverdrup Corp. v. Edwardsville Cmty. Unit Sch. Dist. No. 7*, 125 F.3d 546, 550 (7th Cir. 1997); *see also AXA Corp. Sols. v. Underwriters Reinsurance Corp.*, 347 F.3d 272, 278 (7th Cir. 2003) ("we have recognized a general presumption against abstention"). The purpose of the *Colorado River* Abstention Doctrine is to "allow[] courts to conserve judicial resources," *Deb v. SIRVA, Inc.*, 832 F.3d 800, 814 (7th Cir. 2016), but it is "an extraordinary and narrow exception to the duty of a District Court to adjudicate a controversy properly before it." *Colorado River Water Conservation Dist.*, 424 U.S. at 813. By choosing to abstain from a case without exceptional justification, a court risks denying a party the "opportunity to litigate in a federal forum—an opportunity to which [a diverse party] is entitled under 28 U.S.C. § 1332, in the absence of extraordinary circumstances." *AXA Corp. Sols.*, 347 F.3d at 279.

### 3.1   Step One: Parallel Actions

As to the first step of the *Colorado River* Abstention Doctrine analysis, Symbiont argues that the instant action and the Indiana Action are parallel. (Docket #7 at 5). In a heading in its response brief, M&J states that "Abstention Is Not Warranted in This Case Under Colorado River Because There Is No Parallel Proceeding in State Court and the 10 Factors . . . Favor[] Against Abstention." (Docket #8 at 3). But M&J offers no further substantive argument on the issue of whether this action and the Indiana Action are parallel. Therefore, M&J waives the argument, and the Court will treat the instant action and the Indiana Action as though they are parallel. *See Cmty.*

*Bank of Trenton v. Schnuck Markets, Inc.*, 887 F.3d 803, 825 (7th Cir. 2018) ("If a Rule 12 motion to dismiss is filed, plaintiffs must 'specifically characterize or identify the legal basis' of their claims . . . . The failure to respond waives the claim.").

**3.2     Step Two: Factors**

The Court will next discuss each of the factors of step two.

**3.2.1   Whether the State Has Assumed Jurisdiction Over Property**

It appears that M&J does not dispute that the Indiana court has assumed jurisdiction over the property, but rather argues that the *in rem* counts in the Indiana Action concern Premier—not M&J. (Docket #8 at 6). Therefore, M&J urges, this factor weighs against abstention. (*Id.*) ("Since the lien is inapplicable to M&J, the Property is not at issue in this case . . . ."). Symbiont replies that the *in rem* counts in the Indiana Action "are in consequence of Premier's mechanic's lien on the Indiana property which is the direct result of M&J's breach of its contract." (Docket #10 at 3). The Court agrees with M&J. The claim in federal court does not deal with the Mechanic's Lien or the property. This is not a case in which the federal court and the state court are both vying for jurisdiction over the same piece of property. This factor weighs against abstention. *See Comtel Techs., Inc. v. Paul H. Schwendener, Inc.*, No. 04 C 3879, 2005 WL 433327, at *16 (N.D. Ill. Feb. 22, 2005) ("[The third-party defendant] argues that the first factor also weighs in favor of abstention because plaintiffs have filed an *in rem* mechanic's lien action in state court resulting in that court's jurisdiction over property. However . . . none of the claims in federal court concerns this lien.").

### 3.2.2 The Inconvenience of the Federal Forum

Symbiont argues that, while "the Eastern District of Wisconsin is not an inconvenient forum from [either party's] perspective[]," the federal forum is "less convenient" than Indiana for witnesses from Premier, which Defendant "believes to be an Ohio corporation." (Docket #7 at 7). This argument, which rests on a *belief* that *possible* witnesses may be required to travel from Ohio to either Indiana or Wisconsin is shaky. *See DM Mfg. Beloit, LLC v. Envirodyne Sys. Inc.*, No. 20-CV-272-WMC, 2020 WL 7186153, at *6 (W.D. Wis. Dec. 7, 2020) ("Because multiple states are implicated in these transactions, it is premature to identify where discovery will be taken, what witnesses it will entail, and what depositions or affidavits may be required, although the court cannot find that the federal forum is more convenient. This factor, therefore, is at most neutral."). And, although "[t]he parties' forum selection clause is not dispositive in [*Colorado River* Abstention Doctrine analysis] . . . it is relevant." *Merrill Lynch Com. Fin., Corp. v. Trident Labs, Inc.*, No. 10C5925, 2011 WL 2415159, at *3 (N.D. Ill. June 10, 2011) (citing *AAR Int'l, Inc. v. Nimelias Enters. S.A.*, 250 F.3d 510, 526 n.10 (7th Cir. 2001)). There is, however, a question as to whether the forum selection clause in the Agreement is even valid. (Docket #8 at 8); *see* discussion, *infra*. Given the uncertainty of the forum selection clause and the travel requirements of possible witnesses, the Court holds that this factor is neutral.[1]

---

[1]Compare the present case to one in which the Southern District of Indiana held that the convenience factor weighed "insignificantly" in favor of abstention. *Depuy Synthes Sales, Inc. v. OrthoLA, Inc.*, 403 F. Supp. 3d 690, 708 (S.D. Ind. 2019), *aff'd*, 953 F.3d 469 (7th Cir. 2020). There, the validity of the forum selection clause was in question, and witnesses and defendants would have been required to travel from California to Indiana. *Id.* Here, there is an issue as to the validity of the forum

### 3.2.3 The Desirability of Avoiding Piecemeal Litigation

Defendant argues that proceeding in a single forum would conserve judicial resources, avoid the potential of the two proceedings reaching inconsistent results, and prevent piecemeal litigation. Requiring that a state and a federal court "oversee similar proceedings such as pre-trial motions, discovery matters, and the consideration of similar issues, evidence, and witnesses . . . is effectively 'duplicating the amount of judicial resources required to reach a resolution.'" *Freed*, 756 F.3d at 1022 (quoting *Clark v. Lacy*, 376 F.3d 682, 687 (7th Cir. 2004)). It further produces a risk that "the two proceedings [may] reach inconsistent results." *Id.* "The legitimacy of the court system in the eyes of the public and fairness to the individual litigants also are endangered by duplicative suits that are the product of gamesmanship or that result in conflicting adjudications." *Lumen Const., Inc. v. Brant Const. Co.*, 780 F.2d 691, 694 (7th Cir. 1985). Some of these concerns are present in this case. The federal action and the Indiana Action involve competing allegations that the other party breached the same contract, and the claims arise out of a common event and involve common issues of fact. Although the claim in this Court and the ones in the Indiana Action are not identical, "[t]his factor does not turn on formal identity of issues." *Freed*, 756 F.3d at 1022. An outcome for one party in this Court and for the other party in the Indiana Action on the breach-of-contract count could create a host of issues.

Staying this action would likely preserve "the efficient use of judicial resources and the public's perception of the legitimacy of judicial

---

selection clause, but the distance from Ohio to Wisconsin is much shorter than from California to Indiana.

authority." *Tyrer v. City of South Beloit*, 456 F.3d 744, 756 (7th Cir. 2006). But the Court is reminded that these are always the risks of concurrent litigation—and "the *Colorado River* doctrine focuses on a federal court's obligation to exercise its jurisdiction," requiring an exceptional reason to abstain. *Huon v. Johnson & Bell, Ltd.*, 657 F.3d 641, 649 (7th Cir. 2011). It is "preclusion doctrines [that] operat[e] as a backstop to ensure that the concurrent proceedings do not result in inconsistent judgments." *Id.* Thus, to the extent that this factor favors abstention, it does so only weakly.

### 3.2.4 The Order in Which Jurisdiction Was Obtained by the Concurrent Forums

Symbiont correctly notes that this action was filed nearly a year after the Indiana Action. (Docket #7 at 7). The case in the Northern District of Illinois was filed prior to the Indiana Action, but the transfer order was not effectuated. The present case, as noted by M&J on its civil cover sheet, is technically a new case. (Docket #1-5) (indicating that Plaintiff selected "Original Proceeding" rather than "Transferred from Another District"). M&J alleges that it waited so long after the transfer order to file this action because "[Symbiont's] counsel in Indiana attempted to settle this matter." (Docket #8 at 8). M&J states that it filed this action shortly after the settlement negotiations broke down.[2] (*Id.*)

---

[2] Plaintiff states that the present action was filed August 28, 2020, three days after settlement negotiations broke down. (Docket #8 at 8). However, the Docket for this action indicates that it was filed on June 24, 2020. (Docket #1). Plaintiff also states that it "stayed" federal proceedings during settlement discussions. (Docket #8 at 8). Plaintiff appears to be using this word not for its legal, procedural meaning but rather for its more colloquial meaning (i.e., that Plaintiff decided not to pursue federal litigation during settlement discussions). There is no indication on the docket of this case, nor on that of the case in the Northern District of Illinois, that M&J "stayed" the case. Symbiont similarly points out that no stay orders have

Parties assess and act at their own risk when deciding whether to settle, maintain, or file a suit. This factor would have meant more to the Court had it meant more to M&J. The Court will consider this factor to be in favor of abstention. However, this is allayed by the seventh factor, as neither this case nor the Indiana Action have comparatively proceeded much further than the other. *See infra* Section 3.2.7.

### 3.2.5 The Source of Governing Law

Symbiont argues that, because this case concerns Indiana law, abstention is favored. (Docket #7 at 8). The contract between the parties contains a choice-of-law provision which designates Wisconsin law as the governing law. Defendant argues that, under Indiana law, contracts to perform construction on Indiana real estate cannot be governed by non-Indiana law or be required to be litigated outside of Indiana. *See* Ind. Code § 32-28-3-17 (2021) ("A provision in a contract for the improvement of real estate in Indiana is void if the provision . . . makes the contract subject to the laws of another state; or . . . requires litigation, arbitration, or other dispute resolution process on the contract occur in another state."). Thus, (1) the issue of whether § 32-28-3-17 invalidates the choice-of-law provision must be decided under Indiana law, and (2) if § 32-28-3-17 invalidates the choice-of-law provision, Indiana law will govern this case. Plaintiff does not contest this possibility

Instead, M&J responds that, in cases brought under diversity jurisdiction, the source of governing law is of "little relevance." (Docket #8 at 9). The Supreme Court has stated that only in "rare circumstances [will]

---

been issued by either of the two federal courts involved with this matter. (Docket #10 at 8).

the presence of state-law issues . . . weigh in favor" of surrendering jurisdiction because federal courts are routinely called on to apply state law. *Moses H. Cone Mem. Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 26 (1983). But the Seventh Circuit (while noting the Supreme Court's "dicta" in *Moses*) has "found that a state court's expertise in applying its own law favors a *Colorado River* stay." *Day v. Union Mines Inc.*, 862 F.2d 652, 660 (7th Cir. 1988). Accordingly, district courts in this circuit have consistently agreed that this factor favors abstention when state law governs—even in cases brought under diversity jurisdiction. *See, e.g., Cramblett v. Midwest Sperm Bank, LLC*, 230 F. Supp. 3d 865, 872 (N.D. Ill. 2017); *Freed v. Friedman*, 215 F. Supp. 3d 642, 656 (N.D. Ill. 2016); *Knight v. DJK Real Est. Grp., LLC*, No. 15 C 5960, 2016 WL 427614, at *7 (N.D. Ill. Feb. 4, 2016); *Ingalls v. The AES Corp.*, No. 1:07CV0104-DFH-TAB, 2007 WL 2362967, at *7 (S.D. Ind. Aug. 16, 2007), *aff'd sub nom. Ingalls v. AES Corp.*, 311 F. App'x 911 (7th Cir. 2008). The Court finds that this factor weighs in favor of abstention.

### 3.2.6 The Adequacy of State-Court Action to Protect the Federal Plaintiff's Rights

There is no indication that the Indiana state court cannot adequately protect M&J's rights. Neither party is from Indiana. Both this Court and the Indiana court are able to protect M&J's rights. This factor is neutral.

### 3.2.7 The Relative Progress of State and Federal Proceedings

Both parties agree that the relative progress of the state and federal proceedings is "inconsequential." (Docket #7 at 9, #8 at 10). The Indiana Action was filed nearly a year before this action, but the parties state that neither case has progressed much beyond the initial pleading stages. (Docket #7 at 9, #8 at 10). The Court will treat this factor as neutral.

### 3.2.8 The Presence or Absence of Concurrent Jurisdiction

Symbiont again argues that this Court does not have jurisdiction over the *in rem* claims in the Indiana Action. But, as the Court discussed in factor one, the *in rem* counts are not part of the federal action. Further, it is the "*presence* of concurrent jurisdiction [that] would generally support a finding for abstention in the federal action." *Comtel Techs., Inc.*, 2005 WL 433327, at *17 (emphasis added). This factor weighs against abstention.

### 3.2.9 The Availability of Removal

The next factor recognizes a "policy against hearing a federal claim which is related to ongoing non-removable state proceedings." *Day*, 862 F.2d at 659–60. Symbiont argues that, because the parties' respective breach-of-contract claims are "bound up" with the nonremovable Indiana mechanic's lien and *in rem* proceedings, the Court should abstain from the case. Whether M&J's argument is responsive is unclear. M&J writes, "[t]his factor weighs against abstention because the period to remove the action based on diversity jurisdiction lapsed." (Docket #8 at 11). M&J then cites a case in which the ninth factor disfavored abstention because the plaintiff, who was "a third-party defendant, ha[d] no removal option." *AXA Corp. Sols.*, 347 F.3d at 279. M&J does not dispute whether the Indiana Action is nonremovable because of its ties to *in rem* claims, and the relevance of the case cited by M&J, without more explanation, is not obvious. The Court will consider the ninth factor waived and in slight favor of abstention.

### 3.2.10 The Vexatious or Contrived Nature of the Federal Claim

Symbiont argues that M&J's suit before the Court is vexatious and contrived because it was filed months after the Northern District of Illinois issued the transfer order. In verbatim, Symbiont states that, "while Plaintiff's motivation for filing this new action before this Court after sitting

on its hands for nine months is unknown, it is bothersome and has unnecessarily increased the amount of time and resources needed to resolve the parties' dispute." (Docket #7 at 10).

This is not a case of gamesmanship in which a plaintiff brought a federal suit after its earlier-filed state suit appeared to be losing in state court. *See, e.g.*, *Restoration Servs., LLC v. R&R Boardwalk*, LLC, No. 17 C 1890, 2017 WL 5478304, at *8 (N.D. Ill. Nov. 15, 2017) ("the fact the federal plaintiffs brought their federal suit only after the state trial court denied their request to dissolve the document preservation order, an order they are currently appealing to the state appellate court, strongly suggests that they have behaved vexatiously"). Notably, M&J is not the party that filed the Indiana Action, and the Indiana Action had not progressed much at the time M&J filed this action. A lawsuit is not vexatious or contrived merely because it is "bothersome" and costly. One would be hard pressed to find a defendant who would not describe a case against them with these terms. This factor weighs against abstention.

4.  **CONCLUSION**

Based on the above, the Court is left with four factors that favor abstention, three factors that disfavor abstention, and three factors which are neutral (which the Court must treat as disfavoring abstention, *see Huon*, 657 F.3d at 648 ("because of the presumption against abstention, absent or neutral factors weigh in favor of exercising jurisdiction.")). Certainly, on their own, a few factors suggest that the Court might abstain from this case (though some suggest this with less avail than others). But the Supreme Court and the Seventh Circuit "ha[ve] cautioned that the task of the district court is not to find some substantial reason for the *exercise* of federal jurisdiction but instead to ascertain whether there exist exceptional

circumstances, the clearest of justifications . . . to justify the surrender of that jurisdiction." *Id.* at 645–46 (internal quotations and citation omitted). Such exceptional circumstances are not present here.

Although the Court may be required to address Indiana and Wisconsin law, 28 U.S.C. § 1332 clearly contemplates that federal district courts will be called upon to apply state law. And, while staying this action may avoid the risk of inconsistent outcomes, there are other mechanisms to address this concern. None of the factors favoring abstention in this case carry anything exceptional such that the Court is compelled to deny M&J "an opportunity to which it is entitled under 28 U.S.C. § 1332" to litigate in federal court. *AXA Corp. Sols.*, 347 F.3d at 279.

For the reasons outlined above, the Court will deny Symbiont's motion to dismiss, (Docket #6). Symbiont has not presented the Court with exceptional circumstances warranting abstention pursuant to the *Colorado River* Abstention Doctrine. Finally, the Court will deny M&J's motion to set Defendant's motion for a hearing as moot. (Docket #11).

Accordingly,

**IT IS ORDERED** that Defendant Symbiont Construction, Inc.'s motion to dismiss (Docket #6) be and the same is hereby **DENIED**; and

**IT IS FURTHER ORDERED** that Plaintiff M&J General Contractors, Inc.'s motion to set Defendant Symbiont Construction, Inc.'s motion to dismiss for a hearing (Docket #11) be and the same is hereby **DENIED as moot**.

Dated at Milwaukee, Wisconsin, this 25th day of May, 2021.

BY THE COURT:

_____
J.P. Stadtmueller
U.S. District Judge